**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 2, 2021[*]
Decided April 16, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 19-3048

| | |
|---|---|
| KEDRON JONES, JR., *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 16-CV-3143 |
| JOHN BALDWIN, et al. *Defendants-Appellees*. | Colin S. Bruce, *Judge*. |

**O R D E R**

Kedron Jones, a state inmate, sued prison administrators, alleging that they were deliberately indifferent to problems with the toilet in his cell. Jones filed his complaint pro se and moved the court to recruit pro bono counsel for him. The court denied the motion, instructing Jones to resubmit it with information the court needed in order to rule. Jones never did, but at the final pretrial conference, he again asked the court to

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

recruit an attorney for him. The court demurred based on the scarcity of volunteer lawyers and its willingness to assist Jones with the procedural aspects of the trial. Jones lost his case at trial. On appeal, he challenges only the decisions not to recruit counsel. We see no abuse of discretion, so we affirm.

Jones alleged that he suffered from "cross-flushing" in his cell at Western Illinois Correctional Center. When the toilet in the neighboring cell flushed, human waste flowed into his toilet and occasionally overflowed. Jones had only shampoo or body wash—not disinfectant—to clean the mess. Jones filed a grievance, which was denied at all levels, and he wrote letters to the prison's higher-ranking officials. The prison's engineer came to check on his toilet but, according to Jones, the problem persisted.

Jones turned to federal court. He sued several prison administrators under 42 U.S.C. § 1983, alleging that they were deliberately indifferent to his living conditions and that, by failing to fix the plumbing system, they subjected him to cruel and unusual punishment. U.S. CONST. amend. VIII. He also filed a motion to recruit counsel.

When entering its "merit review" order, the district court (then-Chief Judge Shadid) denied the motion with leave to renew after Jones demonstrated reasonable efforts to find a lawyer on his own. Although Jones had listed three law firms that he had contacted, the court instructed Jones to attach any responses from attorneys denying his requests for representation. The court further instructed him to provide information about his educational background, job history, and litigation experience.

The parties conducted discovery, and Jones's claim withstood a motion for summary judgment. Soon after, the court consolidated Jones's case with another inmate's suit that raised similar claims. A lawyer had been recruited to represent that inmate, so the court asked him to represent Jones, too. Counsel withdrew less than a year later, however, referring to a conflict of interest with the other inmate and a breakdown of the attorney-client relationship with Jones. The cases were severed, and Jones proceeded to trial pro se.

At the final pretrial conference, the district court (now Judge Bruce) explained trial procedure to Jones, including the jury selection process and how to make an opening statement and select witnesses. At the end of the conference, Jones asked if the court could recruit a lawyer to assist him so he didn't "make too many mistakes" because he had "never done a trial before." The judge explained that the court's pro bono resources were extremely limited—less than a half dozen attorneys willing to

"occasionally" assist for every 400 requests—so he could not enlist a second attorney to represent Jones. The judge said he would help Jones whenever he got "stuck" procedurally. Jones quickly acquiesced and assured the court that he understood.

At trial, Jones summarized the facts of his case during his opening statement. The district court guided him through examining witnesses, including the defendants and fellow inmates who had also experienced cross-flushing, and helped Jones lay the foundation for and admit exhibits. The court admitted evidence and allowed lines of questioning over the defendants' objections, giving Jones "leeway" and "indulging … Jones in a lot of ways" it would not have if Jones were represented. The court repeatedly reminded Jones of the elements he had to prove in order to win his case.

After Jones rested, the court entered a directed verdict for four defendants: They had all testified that they had no knowledge of the toilet problem, and Jones had offered no evidence to the contrary. Then, during the defendants' case in chief, the warden (the only remaining defendant) testified that, after he received Jones's letter and grievance, he sent a facility engineer to check on Jones's toilet. The engineer reported back that it was working properly, the warden said, so he believed the issue had been resolved. The engineer's testimony corroborated this story. After closing arguments, the jury returned a verdict for the warden.

On appeal, Jones argues that the district court erroneously denied his motions to recruit counsel because, without previous experience, he was "severely prejudiced" at trial. In particular, he contends, the case came down to a "swearing contest" in which he needed an advocate to develop his story and undercut the defendants'.

District courts have the discretion to recruit volunteer lawyers to represent indigent clients in civil lawsuits. *See* 28 U.S.C. § 1915(e)(1); *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007) (en banc). When presented with a motion to recruit counsel, the district court must ask whether the litigant made a reasonable attempt to obtain counsel on his own and whether, given the difficulty of the case, the plaintiff appears competent to litigate it himself. *Id*. at 654. An abuse of discretion occurs when the decision lacks any support in the record or when the decision is clearly arbitrary or based on erroneous findings of fact or conclusions of law. *Id.* at 658.

The district court did not abuse its discretion in denying either motion to recruit counsel. In denying the first, the court explained that Jones had not provided enough information about either *Pruitt* factor. Although he said he had contacted three law

firms, he did not say when he did or whether they responded. The court also had no information about Jones's competence to litigate a case, so it reasonably asked him for details about his education, work history, and past litigation. *See Machicote v. Roethlisberger*, 969 F.3d 822, 826, 828–29 (7th Cir. 2020) (denial of motion not abuse of discretion when litigant had not shown he tried to find a lawyer himself); *Pruitt*, 503 F.3d at 655 (plaintiff's "literacy, communication skills, educational level, and litigation experience" and "intellectual capacity and psychological history" relevant to competence).

In denying the second, oral, motion, the district court did not expressly revisit the two *Pruitt* inquiries, but it was not required to. The court had already addressed one motion, and Jones never provided the information missing from his first request. *See Thomas v. Anderson*, 912 F.3d 971, 978 (7th Cir. 2018). Still, the district court acknowledged, appropriately, that the case was entering into a more complex stage of litigation, *see Walker v. Price*, 900 F.3d 933, 938–39 (7th Cir. 2018), and assured Jones that it would offer procedural help along the way. This was responsive to Jones's only reason for wanting counsel—unfamiliarity with the process. Further, it was reasonable for the court to refer to the scarcity of pro bono attorneys in denying the motion. *See McCaa v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020).

Had the district court abused its discretion, we still would not reverse the judgment because Jones was not prejudiced at trial. *See Pruitt*, 503 F.3d at 659. With the judge's help, Jones examined witnesses, admitted exhibits, and presented coherent arguments to the jury. Jones lost not because there was a "swearing contest" but because he lacked evidence of any defendant's deliberate indifference to his living conditions. *See Tidwell v. Hicks*, 791 F.3d 704, 709 (7th Cir. 2015) (finding no prejudice where pro se litigant "offer[ed] no reason to think that new counsel … might have turned up evidence that would have affected the outcome of the case"). Jones could not refute four defendants' testimony that each was unaware his toilet was broken, nor did he undermine the warden's and engineer's testimonies that the warden requested an inspection and the engineer reported the toilet was functioning properly. Jones does not explain how a lawyer could have made up for these evidentiary deficits or otherwise brought about a different verdict.

Jones also argues that the district court should have automatically recruited replacement counsel after the lawyer in the consolidated case withdrew. The court had no such obligation. The first judge's effort to recruit a volunteer lawyer did not

indefinitely commit the district court to securing counsel for Jones. *See Wilborn v. Ealey*, 881 F.3d 998, 1008 (7th Cir. 2018).

AFFIRMED